**BEAVERTON TOYOTA CO., INC., an Oregon Corporation, Plaintiff,**

v.

**TOYOTA MOTOR DISTRIBUTORS, INC., a California Corporation, Defendant.**

**Civ. No. 92–1612–RE.**

United States District Court, D. Oregon.

March 8, 1993.

Michael D. Williams, Williams, Fredrickson & Stark, P.C., Portland, OR, for plaintiff.

James R. Hermsen, Bruce L. Campbell, Miller, Nash, Wiener, Hager & Carlsen, Portland, OR, for defendant.

## OPINION

REDDEN, Chief Judge:

Defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff, Beaverton Toyota, Inc. (Beaverton), argues that ORS 650.150 precludes defendant, Toyota Motor Distributors, Inc. (Toyota), from appointing a replacement dealer in Hillsboro, Oregon. Defendant has moved for summary judgment asserting that ORS 650.150 does not apply as it governs the appointment of new dealers in marketing areas historically served by existing dealers.

Plaintiff has been a Toyota dealer since January 29, 1971. Plaintiff's dealership facilities were initially located at 9008 S.W. Canyon Road, Portland, Oregon. On September 9, 1979, defendant advised plaintiff "that Toyota has established an Open Point for an additional Toyota dealership in the Portland Metro market. The proposed location is in Hillsboro, Oregon."

By letter dated December 10, 1979, defendant advised M.F. Salta, plaintiff's majority stockholder (75%) that his "application for an authorized dealership in the Hillsboro, Oregon area has been approved." On April 3, 1980, Hillsboro Toyota, Inc., owned 75% by M.F. Salta, entered into a Toyota Dealer Term Sales & Service Agreement (Agreement). On April 3, 1980, plaintiff entered into a Agreement to reflect a change in the ownership of the dealership. Russell Humberston increased holdings from 25% to 51% of plaintiff's stock. M.F. Salta reduced holdings from 75% to 49% of plaintiff's stock. On June 9, 1982, plaintiff entered into a Agreement to reflect Russell Humberston's acquisition of M.F. Salta's stock and his 100% ownership.

By letter dated July 13, 1983, defendant advised Hillsboro Toyota of plaintiff's intention to relocate its dealership from the Canyon Road location to the current location on S.W. Murray Road in Beaverton. On September 16, 1983, plaintiff completed its relocation to Murray Road (a distance of 2.8 miles from the previous location).

By letter dated January 15, 1985, defendant advised plaintiff and Russell Humberston of Hillsboro Toyota's intention to relocate its dealership from Baseline Road in Hillsboro to Oak Street in the City of Hillsboro. Hillsboro Toyota's relocation was completed on April 5, 1985. The relocation increased the distance between plaintiff and the Hillsboro dealership by $\frac{1}{10}$ of a mile, from 8.9 to 9.0 miles.

In 1989, Hillsboro Toyota executed a dealership buy/sell agreement with Northwest Toyota, Inc. On June 16, 1989, Northwest Toyota entered into an Agreement and took over the Hillsboro Toyota dealership. The dealership remained at the Oak Street location. On August 9, 1991, Northwest Toyota ceased operations. By letter dated September 18, 1991, defendant advised Northwest Toyota that its proposed dealership buy/sell agreement with Bruce Chevrolet, Inc. would not be approved and that its Agreement was terminated.

On August 27, 1991, defendant initiated an evaluation of possible dealership sites within the Hillsboro market area. On May 15, 1992, defendant completed a Portland Metro Multiple Point Market Study, which confirmed the preferred site for a replacement dealer in Hillsboro at the corner of the Tualatin Highway and Minter Bridge Road. By letter dated June 1, 1992, Toyota advised plaintiff and Russell Humberston of its intent to appoint a Toyota dealer at that location.

By letter dated October 1, 1992, defendant advised plaintiff and Russell Humberston that it was rescinding its notice of June 1, 1992 in that it now intended to establish the Hillsboro dealership at 1326 S.E. Enterprise Circle. The relocated dealership would be 1.59 miles from the closed Hillsboro/Northwest dealership and 7.1 miles from plaintiff.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

■ Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical*, 809 F.2d at 630.

## DISCUSSION

■ The intent of ORS 650.150 is to protect existing dealers from the introduction of new or additional dealers into their relevant market area. ORS 650.150(1) allows an existing dealer to enjoin a manufacturer from franchising "an additional motor vehicle dealership ... within the dealer's relevant market area." Courts are also directed to consider the adverse effect upon existing dealers because of the grant of a *"new"* franchise. ORS 650.150(3)(c) (emphasis added). The dispute in the case at bar surrounds the interpretation of the language "additional motor vehicle dealership" (which is a clear violation of the statute) versus a replacement

dealership (presumably not covered by the statute).

Plaintiff's interpretation of a "new dealership" as equivalent to a "replacement dealership" has been rejected by the Florida courts under a similar statute. *See Southside Motor Co. v. Askew*, 332 So.2d 613 (1976). There, Ford Motor Company attempted to appoint a "replacement" franchise in North Jacksonville, and an existing dealer protested to the Director of the Florida Division of Motor Vehicles. The Florida statute at issue states:

> 320.642 Dealer licenses in areas previously served. The department shall deny an application for a motor vehicle dealer license in any community or territory where the licensee's presently licensed franchised motor vehicle dealer or dealers have complied with licensee's agreements and are providing adequate representation in the community or territory for such licensee. The burden of proof in showing inadequate representation shall be on the licensee.

In affirming the Director's determination that Section 320.642 is not applicable, the Florida Supreme Court held:

> We agree with [Ford's] construction of the statute. This determination is based on the reality that a replacement dealer placed in an existing established dealer point which has become open by virtue of a franchise cancellation does not pose a threat to other existing dealerships since the replacement dealer does not offer additional competition.

*Id.* at 615.

*Askew* is applicable here. Defendant intends to fill an established dealer point which has been in existence since 1980. Plaintiff's current facilities were acquired in 1983, three years after Humberston's then-partner opened his Hillsboro Toyota dealership. Therefore, defendant's efforts to appoint a replacement dealer in the Hillsboro area do not fall within the purview of ORS 650.150.

I also find the statute's legislative history relevant. On June 19, 1979, Paul Romain, representing the Oregon Automobile Dealers' Association, testified before the Oregon

House Committee on Business and Consumer Affairs on then Senate Bill 930:

> Well, the problem with Section 4 [ORS 650.150, not amended] is it basically allows the dealers to stop a manufacturer from putting in another dealership if the purpose behind putting in that other dealership is basically to get the existing dealers. This has happened in the past.
>
> A specific example—there was a incident in 1979 dealing with Hannum Datsun down in Eugene, where Hannum's, according to Robert Hannum, the owner of it, was asked by Datsun to build a new facility. He built at that time a $500,000 new facility. He also took on British Leland at the same time. A Datsun representative came into his office, says "Get rid of the British Leland franchise or we will put a Datsun dealership just down the block from you." He literally kicked the guy out of his office, and the Datsun representative on his way out of the office was shaking a finger at Mr. Hannum, saying "I'm going to get you. We're going to put a dealership just down the block." One month later, Datsun franchised Stiles Datsun in Springfield, which is basically just down the block.
>
> So what we're trying to do is if the manufacturer's motive is to promote competition, that's fine. If the manufacturer's motive is to get the existing dealers, then we want some way of stopping that....

*See* Defendant's Declaration of Judith A. Martin.

Plaintiff argues that there is now *one* Toyota dealership in Washington County and if defendant prevails, there will be *two* dealers there. Plaintiff asserts that, therefore, its claim falls within the literal language of the statute. Plaintiff also argues that defendant's own franchise agreement with plaintiff speaks in terms of "additional" dealers or "new" dealers, not "replacement" dealers. Plaintiff asserts that defendant's own common-sense understanding of those ordinary words is consistent with the language used by the legislature in the franchise statute.

Finally, plaintiff argues that defendant's prelitigation conduct estops it from denying the applicability of ORS 650.150. Plaintiff alleges that defendant discussed putting another Toyota dealer into the Hillsboro area prior to June 1, 1992. Then on June 1, 1992, defendant gave plaintiff the 60 day notice required by ORS 650.150 that it was, in terms of the statute, "franchising a new dealership." The June 1 notice specifically denied that defendant was relocating an existing dealership. In a letter to plaintiff dated June 17, 1992, defendant assured plaintiff that it had taken no further action toward "re-establishing Toyota representation in Hillsboro" other than issuing the June 1 notice, because its legal department was "more thoroughly" investigating its rationale for doing so, and that, "At this time, only the determination of re-establishing Hillsboro as an open point and the preferred site location have been made."

Plaintiff contends that defendant is now estopped from arguing that ORS 650.150 does not apply. Plaintiff states that defendant relied on the franchise statute for its actions. Plaintiff states that it then engaged counsel, negotiated with defendant and filed this action based on what defendant said, did and plans to do based on the statute.

Defendant acknowledges that correspondence from Donald Miller, defendant's Portland Region General Manager, to plaintiff and Humberston refers to the proposed "replacement dealer" as a "new dealer" and "additional dealer." Defendant argues that Miller's characterizations are literally correct in that the Portland metro market would increase from 6 to 7 dealers with the addition of a newly franchised dealer in Hillsboro. However, within the context of the statute, defendant contends that Miller's characterizations do not change the uncontroverted facts that Hillsboro has been an established "dealer point" since 1980 and defendant's efforts are focused solely on appointing a replacement dealer. I agree.

As for Miller's reference to the statute in his correspondence with plaintiff, defendant states that it routinely cites ORS 650.150 for *any* relocation *irrespective* of the statute's applicability.

Defendant is not estopped from arguing that the statute does not apply. *See Land Owners v. King County,* 64 Wash.App. 768,

778, 827 P.2d 1017, *rev. denied,* 119 Wash.2d 1008, 833 P.2d 387 (1992) ("the doctrine of equitable estoppel also is inapplicable where the representations relied upon are questions of law rather than questions of fact"). The court in *Roland v. Bernstein,* 171 Ariz. 96, 828 P.2d 1237, 1239 (1991), stated:

> We have been cited no case in which a party has been bound by a misapprehension of the law early in the case requiring that what is not the law be applied even when the error is recognized. We can imagine few more dangerous concepts than the notion that one party may rely on another's misapprehension and bind that party and the court to that error.

I agree with defendant that an expression of opinion as to a matter of law cannot be the basis for estoppel.

## CONCLUSION

The parties do not dispute any of the relevant facts underlying this action. It is a matter of statutory interpretation. "The determination of the meaning of a statute is one of law, ultimately for the court." *Springfield Ed. Ass'n. v. Springfield, etc.,* 290 Or. 217, 621 P.2d 547, 553 (1980).

The Oregon Supreme Court offered the following guidelines to a court when construing a statute:

> Courts must refuse to give literal application to language when to do so would produce an absurd or unreasonable result. Rather, courts must construe the statute if possible so that it is reasonable and workable and consistent with the legislature's general policy.

Toyota argues that Beaverton's literal interpretation of the statute in its extreme would mean that if a Toyota dealership lapsed for even a few hours, ORS 650.150 would apply to prevent a "replacement" dealership.

The legislative history relied on by defendant is helpful in that it puts the statute in context with the concerns being expressed by dealers at the time of enactment.

Defendant's summary judgment motion is granted and this case is dismissed.